IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Charles Turner, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 183 M.D. 2019 |
| | : | Submitted: June 5, 2020 |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Board of Probation and Parole, | : | |
| Byron Rice, and Francis Smolinsky, | : | |
| | : | |
| Respondents | : | |

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                                        FILED:  October 13, 2020


Before the Court are the preliminary objections (POs) of the Commonwealth of Pennsylvania, Board of Probation and Parole (Board),[1] Byron

---

[1] Subsequent to the filing of the petition for review, the Pennsylvania Board of Probation and Parole was renamed the Pennsylvania Parole Board.  Sections 15, 16, and 16.1 of the Act of December 18, 2019, P.L. 776, No. 115 (effective February 18, 2020); *see also* Sections 6101 and 6111(a) of the Prisons and Parole Code (Parole Code), *as amended*, 61 Pa. C.S. §§6101, 6111(a). Section 6111(a) of the Parole Code states that the Board "is an independent administrative board for the administration of the parole laws of this Commonwealth."  *Id.*  Additionally, Section 6111(e) provides, in relevant part:

> [T]he [B]oard shall have all the powers and shall perform the duties generally vested in and imposed upon independent administrative boards and commissions by the [A]ct of April 9, 1929[, P.L. 177, *as amended*, 71 P.S. §§51-732], known as The Administrative Code of

**(Footnote continued on next page…)**

Rice (Rice), and Francis Smolinsky (Smolinsky and, collectively, Respondents) to the *pro se* petition for review (Petition) filed in our original jurisdiction by Charles Turner (Parolee) seeking declaratory and injunctive relief,[2] and monetary damages,

> 1929 [(Administrative Code)], and shall be subject to all the provisions of that act applicable generally to independent administrative boards and commissions.

61 Pa. C.S. §6111(e).  *See also* Section 201(a) of the Administrative Code, 71 P.S. §61(a) ("The executive and administrative work of this Commonwealth shall be performed by the Executive Department, consisting of . . . independent administrative boards and commissions[.]").

Additionally, Section 6141 of the Parole Code states:  "The [B]oard may make general rules for the conduct and supervision of persons placed on parole and may, in particular cases, as it deems necessary to effectuate the purpose of parole, prescribe special regulations for particular persons."  61 Pa. C.S. §6141.  Moreover, Section 506 of the Administrative Code provides, in pertinent part:

> The heads of . . . the several independent administrative boards and commissions . . . are hereby empowered to prescribe rules and regulations, not inconsistent with law, for the government of their respective . . . boards, or commissions, the conduct of their employes and clerks, [and] the distribution and performance of their business[.]

71 P.S. §186.  *See also Johnson v. Pennsylvania Board of Probation and Parole*, 566 A.2d 918, 922 (Pa. Cmwlth. 1989) ("The Board is an administrative agency not governed by the Pennsylvania Rules of Criminal Procedure and has the authority to make and implement its own procedural rules.  Until the Board amends its regulations, it cannot disregard them on an individual case basis.") (citation omitted); *In re Bentleyville Plaza, Inc.*, 392 A.2d 899, 901 (Pa. Cmwlth. 1978) ("[A]dministrative agencies are bound equally with others by their own regulations which have the force and effect of law.").

[2] Although Parolee styled his filing as a Complaint for Declaratory Judgment (Complaint), he should have filed a petition for review because that is the pleading that is used to commence an action against the Commonwealth and its officers under Chapter 15 of the Pennsylvania Rules of Appellate Procedure.  *See, e.g.*, *MFW Wine Co., LLC v. Pennsylvania Liquor Control Board*, 231 A.3d 50, 52 n.1 (Pa. Cmwlth. 2020) (single-judge opinion by Brobson, J.) ("Consistent with the applicable rules of appellate procedure, the Court treats the Amended Complaint as a petition for review directed to this Court's original jurisdiction.  *See* Pa. R.A.P. 1501(a)(3), 1502, 1503.").
**(Footnote continued on next page…)**

2

pursuant to the provisions of the Declaratory Judgments Act (DJA), 42 Pa. C.S. §§7531-7541. We sustain a PO and dismiss the Petition with prejudice.

In a memorandum opinion denying Parolee's Motion for Temporary Injunction (Motion) that Parolee had also filed in this matter, we summarized the facts as alleged in the Petition and the documents attached thereto as follows:

> [Parolee] was convicted of criminal solicitation to commit murder and related offenses, and on August 12, 1997, he was sentenced to 15 to 30 years' imprisonment. On February 5, 2019, [Parolee] was released from prison to parole supervision, at which time he agreed to abide by various conditions of parole, including the following: "you shall maintain employment/vocational training/schooling **as approved by parole supervision staff**." (Petition, Exhibit A at 2) (emphasis added).
>
> [Parolee] is a master mason who previously owned his own masonry company. After being paroled, [Parolee] applied for work and was hired as a bricklayer by McCarthy Masonry at the rate of $27/hour. [Parolee] completed orientation and was instructed to report for work beginning on March 18, 2019. On March 11, 2019, [Parolee] reported to his parole agent, Smolinsky, and his parole supervisor, Rice, that he had obtained gainful employment at McCarthy Masonry. Smolinsky and Rice refused to approve his employment, telling [Parolee] that McCarthy Masonry was "under investigation." (Petition ¶15.)
>
> [Parolee] asserts that McCarthy Masonry has been in business for 30 years, employing approximately 50 people. [Parolee] claims that neither McCarthy Masonry nor its president, James McCarthy, have ever been cited for any civil or criminal infractions, and that the company

---

Consistent with the foregoing, by April 11, 2019 order, we directed that the Complaint be docketed as a petition for review invoking this Court's original jurisdiction, and we refer to Parolee's filing in this memorandum opinion as the Petition, and to the named defendants in the Complaint as Respondents.

is not involved in any litigation or the subject of any investigation. [Parolee] asserts that the real reason Smolinsky and Rice denied him the opportunity to work at McCarthy Masonry is because James McCarthy's son, Sheamus McCarthy, filed a federal civil rights complaint against Smolinsky for illegally seizing money from his residence while he was under Smolinsky's supervision. In his lawsuit, Sheamus McCarthy alleged, *inter alia*, that Smolinsky wrongfully confiscated $4,941 from his home when he was not charged with any crime and there was not probable cause to believe the money was connected to unlawful drug activity. The lawsuit further alleged that after filing a motion for return of property, Smolinsky retaliated by arresting Sheamus McCarthy and initiating revocation proceedings based on minor technical probation violations and a new criminal charge which was later dismissed for lack of evidence. [(Petition ¶¶18-20, Exhibits E, F.)]

Given the above, on March 28, 2019, [Parolee] filed his Petition and Motion, naming the [Board], Rice and Smolinsky as Respondents. [Parolee] claims [] Respondents violated the Prisons and Parole Code [(Parole Code), 61 Pa. C.S. §§101-6309,] and the Fourteenth Amendment to the United States Constitution[3] by imposing parole restrictions on him that are arbitrary and unreasonable. [Parolee] alleges [] Respondents' conduct in depriving him of the opportunity to work for McCarthy Masonry is not rationally related to protecting the public and contrary to the express purpose of parole supervision "to assist the offenders in their rehabilitation and reassimilation into the community. . . ." 61 Pa. C.S. §6153(a). He claims the decision to deny his employment is nothing more than a vindictive response to the unrelated lawsuit filed by his would-be employer's son, Sheamus McCarthy. [Parolee] claims he suffered actual damages in the amount of $216/day in lost wages and benefits, and that he is unable to pay his parole supervision fees, or pay for housing, food, clothing and other necessities. [Parolee]

---

[3] The Due Process Clause of the Fourteenth Amendment provides, "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1.

4

requests that the Court enjoin Respondents from denying him employment at McCarthy Masonry, enjoin Smolinsky and Rice from having any supervisory contact with him, and declare that the reasons Respondents proffered for denying his work are unlawful. [(Petition ¶¶16-17, 23-27.)]

*Turner v. Board of Probation and Parole* (Pa. Cmwlth., No. 183 M.D. 2019, filed May 15, 2019), slip op. at 1-3.

Respondents filed POs[4] alleging, *inter alia*, that Parolee has failed to exercise or exhaust an administrative remedy so that this Court should not entertain the instant Petition seeking declaratory and injunctive relief as well as monetary damages.[5] Specifically, Respondents contend that an administrative remedy exists

---

[4] As this Court has explained:

"In ruling on preliminary objections, the courts must accept as true all well-pled facts that are material and all inferences reasonably deducible from the facts." "However, we 'are not required to accept as true any unwarranted factual inferences, conclusions of law or expressions of opinion.'" "To sustain preliminary objections, 'it must appear with certainty that the law will permit no recovery' and '[a]ny doubt must be resolved in favor of the non-moving party.'"

*Brouillette v. Wolf*, 213 A.3d 341, 351 n.9 (Pa. Cmwlth. 2019) (citations omitted).

[5] "The terms 'exhaustion of statutory remedies' and 'exhaustion of administrative remedies' are at times used interchangeably in our decisional law." *Office of Governor v. Donahue*, 98 A.3d 1223, 1231 n.6 (Pa. 2014). The Board cites Pa. R.C.P. No. 1028(a)(7), relating to "failure to exercise or exhaust a statutory remedy," as the basis for its PO due to Parolee's failure to exhaust his available administrative remedies in this matter. *See, e.g.*, *Keystone Releaf LLC v. Pennsylvania Department of Health*, 186 A.3d 505, 511 (Pa. Cmwlth. 2018) ("[The r]espondents demur to all counts on the primary grounds that Petitioner failed to exhaust administrative remedies and lacks standing."); *Petsinger v. Department of Labor and Industry, Office of Vocational Rehabilitation*, 988 A.2d 748, 753 (Pa. Cmwlth. 2010) ("[Office of Vocational Rehabilitation (OVR)] raises the existence of adequate statutory and administrative remedies both as a demurrer under Pa. R.C.P. No. 1028(a)(4) and as a separate objection under Pa. R.C.P. No. 1028(a)(7)[.] OVR asserts [the petitioner] cannot succeed on his mandamus action because he
**(Footnote continued on next page…)**

whereby Parolee may contest the actions of Rice and Smolinsky with further review by the director of the district parole office and, ultimately, the Board, and that Parolee has not availed himself of this administrative remedy prior to filing the Petition and Motion. *See* Preliminary Objections to Petition for Review ¶¶51-53.

Initially, we note that "[p]etitions for declaratory judgments are governed by the provisions of the [DJA]." *Brouillette v. Wolf*, 213 A.3d 341, 357 (Pa. Cmwlth. 2019) (citation omitted). As this Court has explained:

> Declaratory judgments are not obtainable as a matter of right. Rather, whether a court should exercise jurisdiction over a declaratory judgment proceeding is a matter of sound judicial discretion. Thus, the granting of a petition for a declaratory judgment is a matter lying within the sound discretion of a court of original jurisdiction.

*Id.* (citations omitted). "[A]n action seeking declaratory judgment is not an optional substitute for established or available remedies and should not be granted where a more appropriate remedy is available." *Pittsburgh Palisades Park, LLC v.*

---

clearly had adequate statutory and administrative remedies to address both his employment and OVR client complaints[.]").

Nevertheless, the Board's citation to the proper subsection of Pa. R.C.P. No. 1028(a) is immaterial because it has sufficiently pleaded the basis for its PO so that Parolee is on notice regarding the gravamen of its objection and this Court may properly dispose of the PO. *See, e.g.*, Pa. R.C.P. No. 126 ("The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties."); *Beglin v. Stratton*, 816 A.2d 370, 372-73 (Pa. Super. 2003) ("Although the Appellees failed to spell out that improper service was made by violating Pa. R.C.P. No. 400(c) [in the PO asserting a lack of service generally], improper service was sufficiently pled to raise the issue in the court below to put the Plaintiff on notice and for the Court to properly decide."); *Dominski v. Garrett*, 419 A.2d 73, 75 (Pa. Super. 1980) ("Since the course of litigation would not be served by dismissing these [POs], and in accord with Pa. R.C.P. No. 126 which seeks to secure just and speedy determinations of proceedings, we will treat appellees' [POs] as a demurrer since we assume that is their intended effect and because that is the manner in which the trial court treated them.").

*Pennsylvania State Horse Racing Commission*, 844 A.2d 62, 67 (Pa. Cmwlth. 2004) (citation omitted).

Additionally:

> A party challenging administrative decision-making that has not exhausted its administrative remedies is precluded from obtaining judicial review by mandamus or otherwise. The primary purpose of the exhaustion doctrine is to ensure that claims will be heard, as a preliminary matter, by the body having expertise in the area. It further provides the agency with the opportunity to correct its own mistakes and to moot judicial controversies.

*Matesic v. Maleski*, 624 A.2d 776, 778 (Pa. Cmwlth. 1993) (citations omitted).

As indicated above, Section 6141 of the Parole Code states: "The [B]oard may make general rules for the conduct and supervision of persons placed on parole and may, in particular cases, as it deems necessary to effectuate the purpose of parole, prescribe special regulations for particular persons." 61 Pa. C.S. §6141. Likewise, Section 67.2 of the Board's regulations[6] provides, in pertinent part, that "the Board may release [a] parolee . . . from the conditions of parole . . . which it has imposed." 37 Pa. Code §67.2. In this regard, Section 67.2 further provides that "[t]he release form shall contain the parole number, name of parolee[,] date, signature of parole agent, and the conditions from which the parolee . . . is released." *Id.*

---

[6] *See* Section 506 of the statute commonly referred to as the Commonwealth Documents Law, 45 Pa. C.S. §506 ("The contents of the code, of the permanent supplements thereto, and of the bulletin, shall be judicially noticed."); *Roskwitalski v. Reiss*, 402 A.2d 1061, 1064 (Pa. Super. 1979) ("The [Real Estate] Commission's rules are promulgated in the Pennsylvania Code, and courts must take judicial notice thereof. 45 Pa. C.S. §506.") (footnote omitted).

With respect to the imposition of special conditions of parole, Section 67.1 of the Board's regulations states, in relevant part:

> (a) In addition to the general conditions of parole imposed by Chapter[] 63 [(relating to conditions governing parole)], parolees shall be subject to the additional conditions imposed under [§]63.5 (relating to special conditions of parole)[.]
>
> (b) If problems arise or questions occur concerning the conditions of parole . . . the parolee shall consult with the parole agent, as it is the responsibility of the latter to help the parolee in the interpretation of the conditions of . . . parole. If a parolee is unable to contact his parole agent, he should contact the agent in charge of the district office.

37 Pa. Code §67.1(a), (b).[7]

---

[7] Regarding a parolee's release on parole subject to special conditions, Section 67.3 of the Board's regulations states:

> Every parolee shall acknowledge the following:
>
> (a) That he has read, or has had read to him, the conditions of his parole.
>
> (b) That he fully understands the conditions of his parole and agrees to follow such conditions.
>
> (c) That he fully understands the penalties involved if he violates the conditions of parole in any manner.

37 Pa. Code §67.3. *See also* Section 67.4, 37 Pa. Code §67.4 ("The parole agreement shall contain the parole number, date and signature of the parolee."); *Johnson v. Pennsylvania Board of Probation and Parole*, 532 A.2d 50, 52 (Pa. Cmwlth. 1987) ("In *Green* [*v. Pennsylvania Board of Probation and Parole*, 515 A.2d 1006, 1008 (Pa. Cmwlth. 1986)], we held that a grant of parole is not executed until the prisoner signs the acknowledgement of parole conditions, Board form PBPP-11, and the Board issues its parole release order, Board form PBPP-10.").

The cited Board form PBPP-10 states the following, in relevant part:

**(Footnote continued on next page…)**

In turn, Section 63.5 of the Board's regulations states:

(a) Parolees shall comply with special conditions which are imposed by the Board or which are subsequently imposed by the parole agent.

(b) If problems arise or questions occur concerning the conditions of parole, the parolee shall consult with the parole agent, as it is the responsibility of the latter to help the parolee in the interpretation of the conditions of parole. If a parolee is unable to contact his parole agent, he should contact the agent in charge of the district parole office.

37 Pa. Code §63.5.

Also, should a parolee be dissatisfied with the action or inaction of a parole agent or agent in charge of the district parole office, Section 35.5 of the General Rules of Administrative Practice and Procedure (GRAPP)[8] provides for the filing of an informal complaint with the Board stating, in pertinent part:

If you think that any of your rights have been violated as a result of your parole supervision, you may submit a timely complaint in writing, first to the district director of the district office through which you are being supervised. If your complaint is not resolved to your satisfaction, you may then submit your complaint in writing to the Pennsylvania Board of Probation and Parole, Director of Supervision, P.O. Box 1661, Harrisburg, Pennsylvania 17105-1861.

Wile, Pennsylvania Law of Probation and Parole Appendix B, Form B-4 (3d Ed. 2019) (providing a copy of the PBPP-11 (Rev. 7/91) form). Parolee admits that he received the foregoing information regarding an administrative remedy. *See* Petitioner's Answer and New Matter in Response to Respondents' Preliminary Objections (Petitioner's Answer) ¶52 ("It is admitted that the parole agreement purportedly identifies the existence of a process for submitting a complaint, as stated by [R]espondents.").

[8] The GRAPP apply to proceedings before the Board. Indeed, with respect to the Board's reconsideration of the denial of backtime in a parole revocation decision, this Court has stated:

The [GRAPP] govern practice and procedure before Commonwealth agencies, except to the extent that the agency has promulgated an inconsistent regulation on the same subject.

**(Footnote continued on next page…)**

Informal complaint may be by letter or other writing, and shall be . . . filed as of the date of its receipt. No form of informal complaint is suggested, but in substance the letter or other writing shall contain the essential elements of a formal complaint as specified in §35.9[.] Only one copy of an informal complaint need be filed. It may embrace supporting papers.

1 Pa. Code §35.5.

In turn, Section 35.9 of the GRAPP provides for the filing of a formal complaint stating, in relevant part:

A person complaining of anything done or omitted to be done by a person subject to the jurisdiction of an agency, in violation of a statute or regulation administered or issued by the agency may file a complaint with the agency. . . . A copy of the complaint will be forwarded by the agency to the respondent who will be called upon to satisfy the complaint or to answer the same in writing within the time specified in [Section 35.35 of the GRAPP, 1 Pa. Code] §35.35 (relating to answers to complaints and petitions), . . . after the date of service of the complaint, unless the agency with or without motion shall prescribe a different time. If, in the judgment of the agency, a violation of a statute or regulation administered or issued by the agency has been alleged and has not been satisfied

---

[Section 31.1 of the GRAPP,] 1 Pa. Code §31.1. . . . Because a subsequent appeal [prohibited by Section 73.1(a)(4) of the Board's regulations, 37 Pa. Code §73.1(a)(4),] is not the same as a request for reconsideration based on changed circumstances, we conclude that [Section 35.241 of the GRAPP,] 1 Pa. Code §35.241 [(governing applications for reconsideration of agency orders based on a change in circumstance),] applies to these proceedings before the Board.

*Shaw v. Pennsylvania Board of Probation and Parole*, 812 A.2d 769, 771 (Pa. Cmwlth. 2002) (footnotes omitted). *See also St. Clair Area School District v. Department of Education*, 584 A.2d 384, 386 (Pa. Cmwlth. 1990) ("The [GRAPP] apply to agency proceedings unless a statute sets forth different rules on the same subject, or unless the agency itself has promulgated inconsistent rules. 1 Pa. Code §31.1. With respect to the department's action in this case, there are not statutory or procedural provisions that preempt the application of the [GRAPP].").

10

adequately the agency will either invite the parties to an informal conference, set the matter for a formal hearing, or take another action which in the judgment of the agency is appropriate.

1 Pa. Code §35.9.

Finally, Section 31.19 of the GRAPP states:

Petitions for the issuance, in the discretion of an agency, of a declaratory order to terminate a controversy or remove uncertainty, shall state clearly and concisely the controversy or uncertainty which is the subject of the petition, shall cite the statutory provision or other authority involved, shall include a complete statement of the facts and grounds prompting the petition, together with a full disclosure of the interest of the petitioner.

1 Pa. Code §31.19.

Based on the foregoing, on March 11, 2019, following Smolinsky's and Rice's disapproval of his employment with McCarthy Masonry, Parolee should have contacted the agent in charge of the district office pursuant to Sections 63.5(b) and 67.1(b) of the Board's regulations. 37 Pa. Code §§63.5(b), 67.1(b). If he was dissatisfied with that agent's resolution of the situation, Parolee could have sought further redress with the Board via the submission of an informal complaint; a formal complaint; a petition for a declaratory order; or a request for release from this special condition of parole. 1 Pa. Code §§31.19, 35.5, 35.9; 37 Pa. Code §§63.5(b), 67.1(b), 67.2.[9] *See, e.g.*, *Wheeler v. Pennsylvania Board of Probation and Parole*, 862 A.2d

---

[9] Parolee's assertion that he was relieved of his duty to pursue these administrative remedies because Rice and Smolinsky did not provide him with a written order is unavailing. *See, e.g.*, Petitioner's Answer ¶52(c) ("The complaint process described in the parole agreement is not adequate and complete because respondents Smolinsky and Rice deliberately frustrated [Parolee's] attempt to utilize the complaint process by refusing to provide a written order prohibiting [Parolee's] employment at McCarthy Masonry."). As outlined above, no written order is necessary to pursue any of these remedies under the Board's regulations or the GRAPP. *See also* Section 31.3 of the GRAPP, 1 Pa. Code §31.3 (defining "*Complainants*" as "[p]ersons who complain to **(Footnote continued on next page…)**

127, 130-31 (Pa. Cmwlth. 2004) (holding that the letter of a district director denying a parolee's request to remove a special condition of parole is not a Board adjudication that is appealable to this Court). Instead, Parolee bypassed all of the

the agency of an agency regulation or general order *or anything done or omitted to be done in violation of . . . delegated authority administered by the agency, or any orders . . . issued thereunder, or another alleged wrong over which the agency may have jurisdiction.*") (emphasis added). His mistaken belief that such was necessary, and that Smolinsky's and Rice's refusal to cooperate in this regard, does not relieve him of his duty to seek administrative relief. *See, e.g.*, *White v. Conestoga Title Insurance Company*, 53 A.3d 720, 734-35 (Pa. 2012) ("[The insured's] contention that the [statutory] remedy is inadequate and need not be exhausted because [the insurer] is unable or unwilling to comply with the administrative review process in a meaningful way is unavailing. . . . [S]uch a complaint may be raised and addressed during the administrative process and does not render the administrative remedy inadequate.") (citation omitted).

Finally, Parolee contends that he was relieved of his duty to pursue the foregoing remedies for relief from this special condition of his parole "because [the parole agreement] is an unenforceable adhesion contract." Petitioner's Answer ¶52(b). This assertion is likewise unavailing. As this Court has explained, "there is no prerequisite to a valid parole condition that the parolee must agree to its terms. After a convict has met certain eligibility parole requirements, he is then paroled subject to certain general and possibly some special conditions." *Benefiel v. Pennsylvania Board of Probation and Parole*, 426 A.2d 242, 244 (Pa. Cmwlth. 1981). Further,

> [a]lthough a parolee is entitled to a brief statement of the reasons for the grant or denial of parole, . . . we find no support nor . . . any authority for the proposition that a putative parolee is entitled to counsel to negotiate the terms and conditions of parole. The rationale seems quite obvious. Parole is granted at the discretion of the Board, . . . and the parolee remains in constructive custody of the Commonwealth. As with an incarcerated individual, the Commonwealth, via the Board, may place restrictions on a parolee's liberty intended to effectuate the parolee's rehabilitation and integration into society. Thus, where a putative parolee indicates an unwillingness to abide by the terms and conditions of parole, the Board may determine that parole is not within the individual's best interest and deny parole.

*Lee v. Pennsylvania Board of Probation and Parole*, 885 A.2d 634, 639 (Pa. Cmwlth. 2005). Accordingly, Parolee was not relieved of his duty to seek administrative relief due to the purported invalidity of this special condition of his parole.

12

foregoing available administrative remedies and filed the instant Petition in this Court's original jurisdiction. *See* Petitioner's Answer ¶53 ("It is admitted that the Complaint does not mention [Parolee's] efforts to exhaust administrative remedies.").

Because Parolee failed to avail himself of the above administrative remedies prior to filing the Petition, and has failed to properly assert that these remedies are unavailable, facially unconstitutional, or are inadequate, it is appropriate to deny him the requested relief under the DJA and to dismiss the Petition. As this Court concluded in *Keystone Releaf LLC v. Pennsylvania Department of Health*, 186 A.3d 505, 519 (Pa. Cmwlth. 2018):

> Petitioner has not made a clear showing that an exception to the doctrine of administrative remedies applies. Petitioner has not presented a facial constitutional challenge to the [applicable statute or regulations] nor shown how the administrative remedy before the Department is inadequate. Our review of the Department's administrative review process satisfies us that it offers unsuccessful applicants an adequate remedy to challenge their permit denials and the permitting process.

Additionally, as this Court explained in *Lisa H. v. State Board of Education*, 447 A.2d 669, 674-75 (Pa. Cmwlth. 1982):

> The [Board of Education's] Regulations also make specific provision for parent-initiated due process opportunities for all exceptional and thought-to-be exceptional students. . . . [I]f the plaintiffs wish to continue to seek admission to the program, they have due process procedures available to them, of which they have failed to avail themselves, and a suit in equity will not lie where an adequate and complete remedy at law may be had. *Setlock v. Sutila*, [282 A.2d 380, 381 (Pa. 1971)].

13

Likewise, because Parolee failed to avail himself of the available administrative remedy herein, the instant proceeding will be dismissed.[10]

Accordingly, Respondents' PO is sustained, and the Petition is dismissed with prejudice.[11]

_____
MICHAEL H. WOJCIK, Judge

---

[10] *See also Wheeler*, 862 A.2d at 130-31 ("[W]e conclude that [the parolee] has no cognizable 'personal right' that would entitle him to an adjudication or to appellate review of the paroling condition at issue. Accordingly, because we agree with the Board that this matter is not an adjudication subject to appeal, we will grant the Motion to Dismiss the petition for review.") (footnote omitted); *Cherry v. City of Philadelphia*, 634 A.2d 754, 755-56 (Pa. Cmwlth. 1993) (holding that an attorney failed to raise a substantial constitutional challenge to a city's power to assess taxes necessary to invoke equity jurisdiction under the DJA so that the attorney was required to exhaust administrative remedies before filing suit challenging the constitutionality of the taxes imposed).

[11] "In light of this determination, we need not address the remaining POs." *Keystone Releaf LLC*, 186 A.3d at 519 n.16.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charles Turner,                              :
                                             :
                    Petitioner               :
                                             :
            v.                               :  No. 183 M.D. 2019
                                             :
Commonwealth of Pennsylvania,                :
Board of Probation and Parole,               :
Byron Rice, and Francis Smolinsky,           :
                                             :
                    Respondents              :

# **O R D E R**

AND NOW, this 13th day of October, 2020, the preliminary objection of Commonwealth of Pennsylvania, Board of Probation and Parole, Byron Rice, and Francis Smolinsky is SUSTAINED.  Charles Turner's Complaint for Declaratory Judgment is DISMISSED with prejudice.


_____
MICHAEL H. WOJCIK, Judge